## Chesapeake & Ohio Railway Company v. Mellon, Police Judge.

(Decided February 12, 1915.)

### Appeal from Floyd Circuit Court.

Municipal Corporations—Ordinances—Uncertainty.—An ordinance of a town prescribing a punishment for its violation, must be sufficiently certain as to the portion of the town where it is intended to be in force, that persons may know certainly when they have violated it, or else it is void for want of certainty.

WORTHINGTON, COCHRAN & BROWNING and HARKINS & HARKINS for appellant.

J. C. HOPKINS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

Prestonsburg is a town of the fifth class, and the county seat of Floyd County, Kentucky. It has a population of about 2,000 people. A part of the town is situated upon one side of the Big Sandy River, and a portion of it upon the other side. The means of communication between the two portions of the town is a bridge over the Big Sandy River. From this bridge along the Big Sandy River to the limits of the corporation going toward the south is a distance of something over 1,200 yards. From this bridge to the limits of the corporation going toward the north, is something over 1,000 yards. From this bridge going toward the south to a point called the underground crossing, is about 530 yards. The appellant, Chesapeake & Ohio Railway Company, has a line of railroad extending along and near to the Big Sandy River, on the side opposite to the main portion of the town of Prestonsburg, the entire distance above given, which amounts to something over 2,200 yards. A county road is situated along near the river, entering the corporate limits at the south, and continuing to a point about 425 yards north of the bridge across the Big Sandy River, where it crosses the railroad track and goes to that portion of Prestonsburg, which is situated on that side of the river. This road from the underground crossing running north and passing the bridge and on to where it crosses the railroad, between the bridge and depot, is called Floyd Street. The railroad depot is about 700 yards north of the bridge and adjoins a portion of Prestonsburg

which is on that side of the river, containing about 400 or 500 inhabitants.

The city council of the town of Prestonsburg duly adopted and published an ordinance prohibiting the running of a railroad train, or any locomotive, or car between the underground crossing and the bridge, at a greater rate of speed than seven miles per hour, under a penalty of a fine to be imposed upon any railroad, corporation, or company, or any person, so doing, of not less than fifty dollars, nor more than one hundred dollars for each offense. At the same time the council of the town adopted and published an ordinance, which is in words as follows, namely:

"The city council of the city of Prestonsburg do ordain, as follows: That it shall be unlawful for any railroad company, or any company maintaining or operating any railroad, or any workman, or agent, or employee of any railroad company, or any person operating any railroad, or maintaining same, to run any freight train or passenger train, or train of any kind, or description, or any car, or cars whatever, or any locomotive upon or near Floyd Street in said city, and between the bridge as now located across the Big Sandy River, and the line of the said city limits, or for any distance whatsoever between the points above mentioned at a greater rate of speed than at the rate of six miles per hour, and any such railroad company, or corporation, or person, or persons, workman, agents, or employees thereof, found guilty of violating this ordinance, shall upon conviction, be fined not less than fifty dollars, nor more than one hundred dollars for each offense."

The appellee, W. T. Mellon, who was the Judge of the Police Court in Prestonsburg, after the adoption of these ordinances, issued warrants against the appellant, charging it with a violation of these ordinances, and was proceeding to cause it to be tried upon the warrants, when the appellant filed its petition in the Floyd Circuit Court against the appellee, in which it alleged that the ordinances were unconstitutional, illegal, unreasonable, and void, and asked for a writ of prohibition against the appellee prohibiting him from enforcing the ordinances as against appellant. The appellee filed an answer controverting the allegations of the petition, and an issue being made up, considerable proof was taken by each party, and the court upon a hearing, adjudged that the ordinance prohibiting the movements of trains and loco-

motives and cars upon appellant's road between the underground crossing and the bridge across Big Sandy River, at a greater rate of speed than seven miles per hour, was unreasonable, and that the writ of prohibition prayed for as to that ordinance be awarded against appellee and his successors in office, prohibiting him and them from enforcing the ordinance. The judgment of the court as to this ordinance has not been appealed from, and is not before us for determination. The court, however, adjudged that the ordinance limiting the speed of trains, cars, and locomotives from the bridge over the river to the limits of the town, and which is set out in full above, was reasonable and within the authority of the council to adopt, and refused to grant the writ of prohibition against the appellee prohibiting the enforcement of that ordinance, as prayed for in the petition. From this judgment the appellant has prayed an appeal to this court.

It is unnecessary for a proper determination of this cause to enter into any discussion as to the power of the council of Prestonsburg to adopt and enforce such an ordinance, or as to whether or not under the proof presented, it is a reasonable or unreasonable requirement to prohibit the movement of trains, cars, and locomotives at a greater rate of speed than six miles per hour, because we have arrived at the conclusion that according to the language of this ordinance, that it is void for the want of certainty.

It appears from the testimony in the transcript before us, that it is something over the distance of 1,200 yards from the bridge over the Big Sandy River to the line of the corporate limits of the town in one direction, and from the bridge to the limits of the corporation in the other direction is something over 1,000 yards, and this ordinance does not by its terms state upon which side of the bridge it shall be unlawful to operate a train or cars at a greater rate of speed than six miles per hour. There is nothing in the ordinance by which any one could say whether the running of trains between the northern limits of the town and the bridge was prohibited, or whether the prohibition was in that portion of the town between the bridge and the southern limits of the town. It is apparent from the enactment of the first mentioned ordinance, which was held to be unreasonable by the circuit court, that it was not the intention or purpose of the council to make this ordinance apply in every direction

from said bridge, to the corporate limits of the town, and as it now stands it would impose a punishment upon persons who were never intended to be made amenable to the penalties prescribed by the ordinance. To say that it means to apply in each direction from the bridge to the limits of the town, would be to hold something which the municipal authorities never intended.

In 28 Cyc., 351, in defining the fundamental rules of municipal legislation, one of them is, which requires an ordinance by fair and natural construction to convey a reasonable certainty of meaning, and on page 354 it lays down one of the fundamental essentials to a valid ordinance is, that it must be certain to a common intent.

An ordinance is a law of the municipality, and those who must obey it, as well as those whose duty it is to enforce it, must be able to know when it has been violated.

In the light of the evidence in this case, the place wherein this ordinance is expected to be in force is uncertain. The rule requiring a statute or municipal ordinance to be sufficiently certain as to the place of its operation, that persons who are expected to obey it will know when they have violated it, is so fundamental and of such general acceptation, that no argument is necessary to support it.

The judgment appealed from is therefore reversed and this cause remanded with directions to proceed in conformity with this opinion.